STATE ex rel. WABASH RAILROAD COMPANY, Petitioner, v. O'NEILL RYAN, etc., Respondent.

St. Louis Court of Appeals, November 28, 1905.

1. **NUNC PRO TUNC: Memoranda.** A court cannot order an entry of a judgment, *nunc pro tunc*, unless there is some minute or memorandum on the court's docket, the clerk's minute book, or the files in the case to show the disposition of the case.

2. **APPEAL: Final Judgment: Pending Motion in Arrest.** An appeal will not lie from a judgment while a motion in arrest of the judgment is pending.

Original Proceeding for Writ of Mandamus.

WRIT DENIED.

*George S. Grover* and *Henry W. Blodgett* for petitioner.

*E. T. & C. B. Allen* for respondent.

STATEMENT.—This is an original proceeding instituted by the Wabash Railroad Company to obtain a writ of mandamus directed to the Hon. O'Neill Ryan, Judge of the circuit court of the city of St. Louis, commanding him to file and allow a bill of exceptions in a case wherein the Diamond Match Company is plaintiff and said railroad company defendant. On Judge Ryan's refusal to sign the bill of exceptions, it was signed by bystand-

ers, but the judge would not permit it to be filed as part
of the record. No question was made against the veraci-
ty of the bill, nor were the signing and filing of it refused
because it failed in any regard to state the truth. The
refusal was based on the supposition that the bill was
tendered after the term at which the case was tried and
without any order during said term granting time be-
yond the term to file it. The record presents a series of
misprisions by the clerk of the circuit court, and to make
the present controversy intelligible, it is necessary to
state them and the proceedings in which they occurred.
In doing this we shall follow the narrative of Judge Ry-
an himself as contained in his return to the alternative
writ. The case of the Diamond Match Company against
the Wabash Railroad Company was tried and submitted
for decision late in the spring of 1904; but because
of the pressure of official work, judgment in it was not
rendered until January 4, 1905. On account of the de-
lay counsel for the railroad company was unaware of the
entry of judgment until more than four days had
elapsed, when a motion for new trial would have been
too late. In order to afford an opportunity for the time-
ly filing of such a motion, and on the application of
counsel for the railroad company, the court on January
18, 1905, ordered the judgment of January 4th set aside
and that in lieu thereof judgment be entered on Janu-
ary 18th, for the same amount, and otherwise in accord-
ance with the previous entry. The list of decisions
handed down in Judge Ryan's division of the circuit
court on January 18th, contained the full order for the
judgment of that date, and the minutes and papers show
the rendition of the new judgment. It was discovered
afterwards that the clerk failed to enter any part of the
order made January 18th, except the direction to vacate
and set aside the judgment of January 4th. In other
words, the clerk entered of record the order setting
aside the judgment of January 4th, but did not enter the

judgment in favor of the Diamond Match Company rendered January 18th. On the next day, January 19th, the railroad company filed its motions for new trial and in arrest of judgment. The former of those motions was everruled on March 8th, but the motion in arrest was not passed on at that time, nor has it ever been. The minutes of the court, and the minutes and papers in the case and the record of the court, show an affidavit for an appeal was filed by the railroad company, an appeal bond filed and approved and an appeal granted on March 10th, but there is no showing that time was granted beyond the term to file a bill of exceptions. The appeal was never perfected because the railroad company could obtain no bill of exceptions. The April term of the circuit court began April 3, 1905, and the record shows that on April 5th, the third day of said term, the railroad company was granted additional time to and including May 10, 1905, *to plead in the case.* On May 5, 1905, said company tendered its bill of exceptions for signing and filing; whereupon counsel for the plaintiff (the Diamond Match Company) suggested to the court that there had been no order obtained during the February term allowing time beyond that term for the filing of the bill of exceptions. Thereupon the defendant (the Wabash Railroad Company) filed an application for the entry of a *nunc pro tunc* order as of March 10th, one of the days of the regular February term, showing the allowance of thirty days for filing a bill of exceptions, and a *nunc pro tunc* entry as of April 5th, showing that the time granted to May 10th was not to plead, as the record recites, but to file bill of exceptions. If both these *nunc pro tunc* entries had been ordered, the record would have shown that on March 10th, and during the term judgment was rendered, the defendant had been allowed thirty days to file a bill of exceptions, and that within the currency of that order, on April 5th, it had been allowed additional time until May 10th, to file the bill. But the trial court

overruled the application for a *nunc pro tunc* entry as of date March 10th, on the ground that there were no minutes or data on which to base such an entry. The court ordered a *nunc pro tunc* entry as of date April 5th, extending the time for filing the bill of exceptions to May 10th. This ruling was based on the theory that the record entry made by the clerk on April 5th, reciting that defendant was granted time to plead, afforded a sufficient basis for *nunc pro tunc* entry correcting that one so as to read "time to file bill of exceptions" instead of "time to plead." The extension of the time from April 5th to May 10th, is barren of effect in favor of the railroad company without a *nunc pro tunc* entry of March 10th to support it; because, without the latter entry, the former was made after the time granted to file the bill had expired. On May 8th, the day those two rulings were made, the defendant tendered its bill of exceptions in the cause and the court refused in writing to consider the bill, for the reason that it was too late for a good bill to be filed. On May 11th, the plaintiff (Diamond Match Company) whose counsel meanwhile had discovered that the clerk had omitted to enter the judgment of January 18th, presented an application for a *nunc pro tunc* entry of the judgment in its favor against the Wabash Railroad Company as of that date. On June 14th, the court sustained the application, as there were minutes to justify said entry, and ordered that judgment be entered on June 14th as of January 18th in favor of the Diamond Match Company for $1,280 and interest. On the same day the court overruled another motion which the defendant had filed for a *nunc pro tunc* entry of date March 10th, extending the time for filing a bill of exceptions. On June 17th, and three days after the entry of judgment *nunc pro tunc* in favor of the plaintiff, the defendant filed motions for new trial and in arrest of the judgment entered *nunc pro tunc* on June 14th, as of Jan-

uary 18th; which motions were stricken from the files for the reason that the judge thought he could not consider them because the case had been appealed at the February term and the court had no power to do anything further than to make orders to correct its record; that is, orders for *nunc pro tunc* entries when data could be found to authorize them. It further appears that the clerk of the court never entered of record the filing of defendant's motions for new trial and in arrest which were filed on January 19, 1905, but only made memoranda on the papers and the minute book. To correct these omissions, the circuit court, on July 7th, ordered a *nunc pro tunc* entry as of January 19th, showing the filing by defendant on that date of the motions for new trial and in arrest. On July 7th, the defendant tendered another bill of exceptions which included all the matters contained in the preceding bill; that is, the evidence and rulings in the course of the trial on the merits and also all matters which had occurred since the trial. Those subsequent matters and proceedings are recited above and consist of the various motions, *nunc pro tunc* entries, applications to file bills of exceptions and the orders and rulings of the court thereon. On the same day, July 7th, the defendant asked leave to file another affidavit for an appeal and an appeal bond. The court refused to permit the filing of those papers, refused to grant the defendant an appeal and refused to approve and sign the bill of exceptions then tendered, for the reason that there had been no order made at the February term, granting time beyond that term for filing a bill of exceptions, and for the additional reason that the case was then pending on the appeal taken March 10th. Thereupon defendant's counsel procured the signatures of three bystanders to the bill of exceptions and again tendered it; but the court still refused to allow it to be filed, taking the position that the court was not bound to permit the filing of a bill of exceptions when signed by bystand-

ers unless such bill was tendered during the term at which judgment was rendered or within the time allowed beyond the term.

GOODE, J. (after stating the facts).—None of the allegations of fact contained in the return of the honorable circuit judge to the writ of mandamus has been traversed, and we shall accept them all as true. An appeal of the case of the Diamond Match Company against the Wabash Railroad Company was taken March 10, 1905, during the February term of that year. There is no record entry showing that the railroad company was granted time beyond that term to present and file a bill of exceptions; and it is on this fact principally, that the court refused the two bills of exceptions tendered by it and refused to allow the second appeal which was prayed on July 7th, subsequent to the entry on that day of the *nunc pro tunc* judgment as of date January 18th. It is insisted by counsel for the railroad company that it was entitled to a *nunc pro tunc* entry showing that in point of fact the court on March 10th allowed time beyond the term to file a bill of exceptions. But this was a matter for the finding of the court below on competent evidence. The court found there was no minute or memorandum on the court's docket, the clerk's minute book or the files in the case, to support a *nunc pro tunc* entry of that kind. There is nothing in the pleadings in the present case to controvert this finding; and if it is true, the court ruled correctly in refusing the *nunc pro tunc* entry. [Ross v. Railroad, 141 Mo. 390, 38 S. W. 926, 42 S. W. 957.]

Another fact to be seized is that when the appeal was allowed on March 10th, a motion in arrest of judgment was still pending; for the return to the alternative writ states that on March 8, 1905, the court overruled the defendant's motion for new trial; but the motion in arrest was not passed on before the appeal was

allowed or subsequently. Now, then, we have two outstanding facts tending to show the first appeal was premature, namely; the pendency of the motion in arrest and the fact that when the appeal was allowed there was no entry of record of a judgment in the case. The latter fact is the only one insisted on as invalidating the original appeal; but we deem the pendency of the motion in arrest decisive and its effect more certain. Hence, we shall rest our decision on it. In truth the argument in the briefs has gone principally to what we consider an immaterial proposition; the right of the railroad company to *nunc pro tunc* entries extending its time to file bill of exceptions and allowing it to file motions for new trial and in arrest after the entry on June 14th of judgment *nunc pro tunc* as of January 18th in favor of the Diamond Match Company. These questions may all be put aside; for in view of the fact that no valid appeal was granted, they may be included in the record when a valid appeal is taken, and, if relevant to the final result in the cause, may be reviewed. Of course an appeal will not lie from the merits of a case until there is a final judgment. [Silvery v. Sumner, 51 Mo. 199.] A final judgment had been rendered, but not entered; so as to this feature, if we were to consider it, the essential question would be: Does an appeal lie from a judgment which has been rendered but not spread on the records? Perhaps the answer to this question would depend somewhat on whether there was a sufficient minute of the judgment. The pleadings in this proceeding show nothing in regard to what was contained in the minute of the judgment rendered January 18th; but the alternative writ says there were minutes on the papers and the clerk's docket.

Stepping aside for a moment from the pleadings and record before us, and looking at the bill of exceptions tendered by the railroad company, and which is presented here as an exhibit, we find it recites an applica-

tion by the Diamond Match Company for a *nunc pro tunc* entry as of January 18th and that the recited application avers, as a basis for the entry, that the following minute appears on the files of the original case:

"Jan. 18. Judgt. of Jan. 4, 1905, vacated and set aside & Judgt. entered as of this date for $1280, with interest at six per cent from Aug. 7, 1901."

Also that a minute to the same effect and of the same date appears in the minute book of the clerk of the circuit court. Respondent's return in the present case states that the court's list of decisions rendered January 18th, showed judgment was rendered for the Diamond Match Company against the Wabash Railroad Company on that date. Those memoranda are not now before us for an adjudication as to whether they were sufficient to authorize a *nunc pro tunc* entry or not; but we refer to them to elucidate, in some measure, the circuit court's rulings. There is reason for the opinion that a minute as full as the one above quoted would be a sufficient entry of judgment to uphold an appeal, even though the judgment was not spread in full on the records. But the proposition is a dubious one, and the case of State v. Popple, 53 Mo. 321, appears to be opposed to it. [See, also, Logan v. Harris, 90 N. C. 7.] We pass the question over as there is no present need to decide it. Our opinion is that the pendency of the motion in arrest stood in the way of the appeal taken March 10th, for the reason that there had been no final disposition of the cause. It has been adjudged in this State, and elsewhere, that an appeal does not lie while a motion for new trial is pending. [State ex rel. v. Smith, 104 Mo. 418, 16 S. W. 415.] We can think of no reason why a like rule should not prevail when a motion in arrest is pending; for if the trial court should sustain the motion, thereby arresting the judgment, there would be no final judgment against the defendant from which it could appeal. [Garesche v. Emerson, 31 Mo. 258; Hood v. State, 44 Ala. 81.] But

there are cases against this opinion. [Young v. State, 6 Ohio 435; M'cIntyre v. Pope, 38 Ill. 514.] It is the practice in this State to enter judgment immediately after the verdict is returned, without waiting for motions for new trial and in arrest; which usually are filed and disposed of subsequent to the rendition of judgment, though technically due before. In view of this practice, the reason fails which is assigned in cases supra, for holding an appeal will lie while a motion in arrest is pending; to-wit, that rendering judgment, in effect, overrules the motion.

Orders correcting a record *nunc pro tunc* are subject to review and are presented to an appellate court by a bill of exceptions. [Elliott, App. Prac. secs. 214, 215; Hansbrough v. Fudge, 80 Mo. 307; Baker v. R. R., 122 Mo. 533, 26 S. W. 20; Ross v. R. R., 141 Mo. 390, 38 S. W. 926, 42 S. W. 957.] We have no doubt that the defendant would have been entitled to its bill of exceptions and its appeal from rulings made subsequent to the appeal of March 10th, even if the appeal had been effective. But it was not, because of the undisposed of motion in arrest of judgment. Hence, the appeal may be dismissed by the railroad company and the motion in arrest can be passed on then and, if overruled, the relator may appeal and bring the entire record up by bill of exceptions. This decision makes it unnecessary and improper to order by mandamus the allowance of a second appeal or the signing and filing of a bill, as prayed by relator. We think the right way to dispose of the matter is for the railroad company to present here a certified copy of the judgment and the order allowing the appeal and dismiss the appeal; whereupon the circuit court may rule on the motion in arrest and, if the ruling is adverse to the railroad company, it may appeal and the cause will be before this court for review of all the proceedings in it. Therefore a peremptory writ of mandamus will be denied. All concur.